**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

IN RE FACEBOOK, INC., IPO SECURITIES   :     MDL NO. 12-2389
AND DERIVATIVE LITIGATION         :

                        This document relates to the
                        Consolidated NASDAQ Actions:

| | |
|---|---|
| No. 12-cv-4054 | No. 12-cv-4600 |
| No. 12-cv-4200 | No. 12-cv-4716 |
| No. 12-cv-4201 | No. 12-cv-5549 |
| No. 12-cv-4315 | No. 12-cv-5630 |
| No. 12-cv-4403 | No. 12-cv-6882 |

**MEMORANDUM OF DEFENDANTS IN OPPOSITION TO MOTION (DOC. 117) FOR
AN ORDER LIFTING THE PSLRA DISCOVERY STAY AND FOR LEAVE TO
AMEND THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

William A. Slaughter (PA Bar No. 30637)*
Stephen J. Kastenberg (PA Bar No. 70919)*
Paul Lantieri III (PA Bar No. 88160)*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: 215.665.8500
Fax: 215.864.8999
slaughter@ballardspahr.com
kastenberg@ballardspahr.com
lantierip@ballardspahr.com

*Attorneys for Defendants
The NASDAQ OMX Group, Inc., The
NASDAQ Stock Market LLC, Robert
Greifeld, and Anna M. Ewing*

*Admitted pro hac vice

## <u>TABLE OF CONTENTS</u>

*Page*

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

III.  ARGUMENT ..................................................................................................... 6

    A.    The PSLRA Mandates a Stay of Discovery Except When Particularized Discovery Is Necessary to Preserve Evidence or to Prevent Undue Prejudice ........................................................................................... 6

    B.    Plaintiffs Have Not Demonstrated that Discovery Is Necessary to Preserve Evidence or to Prevent Undue Prejudice ............................... 8

    C.    The PSLRA Discovery Stay Applies to All of Plaintiffs' Claims ........................ 14

    D.    The SRO Immunity Doctrine Warrants a Stay of Discovery Independently of the PSLRA ............................................................... 16

    E.    Plaintiffs' Request for Leave to Amend Should Be Denied Because Any Amendment Would Be Futile ................................................. 18

IV.   CONCLUSION .................................................................................................. 21

# **TABLE OF AUTHORITIES**

*Page(s)*

### CASES

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
No. 07-1204, 2007 WL 2049738 (S.D.N.Y. July 18, 2007)....................................8, 10, 13, 14

*Barbara v. New York Stock Exchange, Inc.*,
No. 94-1088, 1995 WL 221487 (E.D.N.Y. Mar. 30, 1995), *aff'd* 99 F.3d 49 (2d Cir.
1996) ...........................................................................................................................................19

*Behrens v. Pelletier*,
516 U.S. 299 (1996)............................................................................................................ 16-17

*Billhofer v. Flamel Technologies, S.A.*,
No. 07-9920, 2012 WL 3079186 (S.D.N.Y. July 30, 2012)....................................................18

*Brigham v. Royal Bank of Canada*,
No. 08-4431, 2009 WL 935684 (S.D.N.Y Apr. 7, 2009) ........................................................10

*D'Alessio v. New York Stock Exchange, Inc.*,
125 F. Supp. 2d 656 (S.D.N.Y. 2000), *aff'd* 258 F.3d 93 (2d Cir. 2001) ...............................19

*DL Capital Group LLC v. Nasdaq Stock Market Inc.*,
No. 03-9730, 2004 WL 993109 (S.D.N.Y. May 5, 2004), *aff'd* 409 F.3d 93 (2d Cir.
2005) .........................................................................................................................................19

*Friedman v. Quest Energy Partners LP*,
Nos. 08-936, et al., 2009 WL 5065690 (W.D. Okla. Dec. 15, 2009) .......................................8

*Gardner v. Major Automotive Cos.*,
No. 11-1664, 2012 WL 1230135 (E.D.N.Y. Apr. 12, 2012) ............................................14, 15

*Global Intellicom, Inc. v. Thomson Kernaghan & Co.*,
No. 99-342, 1999 WL 223158 (S.D.N.Y. Apr. 16, 1999) .......................................................12

*Gurfein v. Ameritrade*,
312 Fed. App'x 410 (2d Cir. 2009)..........................................................................................19

*Hardy v. Fischer*,
No. 08-2460, 2010 WL 4359229 (S.D.N.Y. Nov. 3, 2010).....................................................19

*Hunter v. Bryant*,
502 U.S. 224 (1991)..................................................................................................................17

*In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*,
No. 02-5575, 2003 WL 21729842 (S.D.N.Y. July 25, 2003).....................................................7

*In re Asyst Technologies, Inc. Derivative Litigation*,
  No. 06-4669, 2008 WL 916883 (N.D. Cal. Apr. 3, 2008)......................................10

*In re Bank of America Corp. Securities, Derivative, and ERISA Litigation*,
  No. 09-2058, 2009 WL 4796169 (S.D.N.Y. Nov. 19, 2009)..................................12

*In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*,
  763 F. Supp. 2d 423 (S.D.N.Y. 2011).................................................................11

*In re Facebook, Inc., IPO Securities & Derivative Litigation*,
  MDL No. 12-2389, Civ. No. 12-6439, --- F. Supp. 2d ---, 2013 WL 525191........15

*In re GMR Securities Litigation*,
  No. 12-4599, 2012 WL 5457534 (S.D.N.Y. Nov. 8, 2012)....................................13

*In re LaBranche Securities Litigation*,
  333 F. Supp. 2d 178 (S.D.N.Y. 2004)..............................................................8, 11

*In re Livent, Inc. Noteholders Securities Litigation*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001)...................................................................7

*In re NYSE Specialists Securities Litigation*,
  405 F. Supp. 2d 281 (S.D.N.Y. 2005), *aff'd* 503 F.3d 89 (2d Cir. 2007)..........11, 19

*In re Refco, Inc.*,
  No. 05-8626, 2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006).....................................9

*In re Smith Barney Transfer Agent Litigation*,
  No. 05-7583, 2006 WL 1738078 (S.D.N.Y. June 26, 2006) ....................10, 13, 14

*In re Spectranetics Corp. Securities Litigation*,
  2009 WL 3346611 (D. Colo. Oct. 14, 2009) ....................................................7, 10

*In re Sunrise Senior Living, Inc.*,
  584 F. Supp. 2d 14 (D.D.C. 2008) ......................................................................10

*In re Trump Hotel Shareholder Derivative Litigation*,
  No. 96-7820, 1997 WL 442135 (S.D.N.Y. Aug. 5, 1997) .....................................14

*In re Tyco International, Ltd. Multidistrict Litigation*,
  MDL No. 02-1335-B, 2003 WL 23830479 (D.N.H. Jan. 29, 2003)................. 15-16

*In re Vivendi Universal S.A., Securities Litigation*,
  381 F. Supp. 2d 129 (S.D.N.Y. 2003)..............................................................6-7, 13

*In re WorldCom Securities Litigation*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002)............................................................. 11-12

*Kuriakose v. Federal Home Loan Mortgage Co.*,
    674 F. Supp. 2d 483 (S.D.N.Y. 2009)......................................................................8, 10, 13, 14

*Lander v. Hartford Life & Annuity Insurance Co.*,
    251 F.3d 101 (2d Cir. 2000)..................................................................................................6

*Locurto v. Safir*,
    264 F.3d 154 (2d Cir. 2001)................................................................................................17

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)......................................................................................................16, 18

*NECA-IBEW Pension Trust Fund v. Bank of America Corp.*,
    No. 10-440, 2011 WL 6844456 (S.D.N.Y. Dec. 29, 2011) ......................................9-10, 13-14

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)................................................................................................17

*Rampersad v. Deutsche Bank Securities, Inc.*,
    381 F. Supp. 2d 131 (S.D.N.Y. 2003)................................................................................15

*Rolle v. Berkowitz*,
    No. 03-7120, 2004 WL 287678 (S.D.N.Y. Feb. 11, 2004)..................................................19

*S.G. Cowen Securities Corp. v. U.S. District Court*,
    189 F.3d 909 (9th Cir. 1999) ..............................................................................................7

*Sarantakis v. Gruttadauria*,
    No. 02-1609, 2002 WL 1803750 (N.D. Ill. Aug. 5, 2002) ...............................................14-15

*Sisk v. Guidant Corp.*,
    No. 05-1658, 2007 WL 1035090 (S.D. Ind. Mar. 30, 2007) ...............................................13

*Standard Investment Chartered, Inc. v. National Association of Securities Dealers, Inc.*,
    Nos. 07-2014, *et al.*, 2010 WL 749844 (S.D.N.Y. Mar. 1, 2010), *aff'd* 637 F.3d 112
    (2d Cir. 2011)...................................................................................................................19

*Tobias Holdings, Inc. v. Bank United Corp.*,
    177 F. Supp. 2d 162 (S.D.N.Y. 2001)................................................................................15

*Union Central Life Ins. Co. v. Ally Financial, Inc.*,
    No. 11-2890, 2012 WL 3553052 (S.D.N.Y. Aug. 17, 2012)................................................15

*Weissman v. National Association of Securities Dealers, Inc.*,
    500 F.3d 1293 (11th Cir. 2007) ..........................................................................................17

*X-Men Securities, Inc. v. Pataki*,
    196 F.3d 56 (2d Cir. 1999)................................................................................................17

**STATUTES**

15 U.S.C. § 78c ....................................................................................................2

15 U.S.C. § 78f .....................................................................................................2

15 U.S.C. § 78s ..................................................................................................2-3

15 U.S.C. § 78u .................................................................................................2-3

15 U.S.C. § 78k-1 ...............................................................................................2

15 U.S.C. § 78u-4 ........................................................................................6, 8, 15

**SELF-REGULATORY ORGANIZATION AUTHORITIES**

NASDAQ Stock Market Rule 4626.....................................................................20

*In re The NASDAQ Stock Market, LLC & NASDAQ Execution Services, LLC*, Exch. Act
    Rel. No. 69,655, 2013 WL 2326683 (May 29, 2013) ...................................4, 5, 18

*Order Granting Approval of a Proposed Rule Change to Amend Rule 4626 – Limitation
    of Liability*, Exchange Act Release No. 69,216 (Mar. 22, 2013), 78 Fed. Reg. 19,040
    (Mar. 28, 2013) ...........................................................................................5, 20

**OTHER AUTHORITIES**

House of Representatives Report No. 104-369 (1995), *reprinted in* 1995 United States
    Code Congressional and Administrative News 730 ..................................................7

Senate Report No. 104-98 (1995), *reprinted in* 1995 United States Code Congressional
    and Administrative News 679 ..........................................................................6-7

v

## I.      INTRODUCTION

This matter is before the Court on plaintiffs' motion for relief from the automatic stay of discovery mandated by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and for leave further to amend the consolidated amended complaint ("Complaint" or "CAC"), in light of the entry of an enforcement order by the SEC following its investigation of the systems issues experienced by NASDAQ in the initial public offering ("IPO") of Facebook, Inc., common stock.[1]  Both requests should be denied.

With respect to their request for discovery, plaintiffs cannot demonstrate the exceptional circumstances required to obtain relief from the PSLRA discovery stay:  they do not and cannot assert that discovery is necessary to preserve evidence, and they will not suffer any undue prejudice if discovery is deferred until after the Court has ruled on defendants' motion to dismiss the Complaint, as the PSLRA requires.  Moreover, even apart from the PSLRA, defendants are entitled to a stay of discovery pending the Court's ruling on their motion to dismiss by virtue of the immunity NASDAQ enjoys as a self-regulatory organization ("SRO") acting within the scope of its regulatory responsibilities.  Such immunity provides protection not only from liability, but also from the burdens of litigation, including discovery.

With respect to plaintiffs' request for leave further to amend their Complaint, such amendment would be futile.  The grounds on which defendants are entitled to dismissal – SRO immunity, the inability of plaintiffs to state a negligence claim against NASDAQ in light of the economic loss doctrine, the failure of plaintiffs to allege the necessary elements of their securities fraud claims, and the liability limitation of NASDAQ Rule 4626 – are not made any

---

[1]     The defendants are The NASDAQ Stock Market LLC (the "Exchange"), its parent, The NASDAQ OMX Group, Inc. ("NASDAQ OMX," and collectively with the Exchange, "NASDAQ"), Robert Greifeld, NASDAQ OMX's Chief Executive Officer, and Anna M. Ewing, NASDAQ OMX's highest-ranking technology officer.

less compelling by the SEC's investigation or enforcement order.  Indeed, the SEC's active

oversight of NASDAQ's handling of the Facebook IPO reinforces the regulatory nature of the

conduct about which plaintiffs complain and thus the applicability of the doctrine of SRO

immunity in this context.  (*See* Memorandum in Support of Defendants' Motion to Dismiss

(Doc. No. 127) ("Dismissal Mem."), at 24-26, 29-30.)  And the SEC's findings provide no basis

for plaintiffs to cure any of the other deficiencies of their Complaint.  Nothing about the SEC's

investigation or enforcement order lessens the applicability of the economic loss doctrine or

NASDAQ Rule 4626, or supplies any of the missing elements of plaintiffs' securities fraud

claims.

   For these reasons, as discussed in more detail below, plaintiffs' motion should be

denied.

## II. BACKGROUND

   Defendants respectfully refer the Court to their Dismissal Memorandum for more

detailed background information pertinent to plaintiffs' present motion.  As explained in that

memorandum, NASDAQ is an SRO registered as a national securities exchange under Section 6

of the Securities Exchange Act of 1934 ("Exchange Act").  *See* 15 U.S.C. §§ 78f & 78c(a)(26).

The Exchange Act establishes a system of cooperative regulation under which private SROs like

NASDAQ conduct the day-to-day regulation and administration of the nation's securities

markets under the close supervision of the SEC.  Together, they share responsibility to maintain

fair and orderly markets.  *See* 15 U.S.C. § 78f(b)(5); *see also, e.g.*, 15 U.S.C. § 78k-1(a)(1)(C)

(the national market system created by the Exchange Act furthers the "maintenance of fair and

orderly markets").  Among other regulatory functions, the SEC enforces exchanges' compliance

with the Exchange Act, the SEC's rules, and the exchanges' own rules.  (*See* Dismissal Mem. at

3-4.)  Thus, the SEC may bring an action to enjoin any activity by an exchange that violates the

Exchange Act or any rules promulgated thereunder, and the SEC may suspend or revoke the registration of an exchange, censure it, or restrict its activities, functions, and operations.  15 U.S.C. §§ 78u(d), 78s(h)(1).

Plaintiffs' Complaint, filed on April 30, 2013, focuses on NASDAQ's commencement of secondary market trading after the Facebook IPO, a process (called the IPO Cross) governed by SEC-approved rules.  (*See* Dismissal Mem. at 4-8.)  On May 18, 2012, the day of the Facebook IPO, NASDAQ experienced systems issues that delayed the completion of the Facebook IPO Cross.  NASDAQ determined to proceed with a minor system modification rather than postpone the opening of secondary trading.  Although the system modification permitted secondary trading to open, certain orders were not included in the Facebook IPO Cross, and NASDAQ's system did not immediately disseminate confirmation reports for orders executed in the Cross.  Thereafter, NASDAQ determined not to halt trading while the dissemination of Cross confirmation reports was delayed.  (*See generally* CAC; *see also* Dismissal Mem. at 9-13.)

Plaintiffs claim that NASDAQ was negligent in the design, testing, and implementation of its systems for the operation of its IPO Cross, and in deciding to proceed with and not to halt trading on the day of Facebook's IPO.  (*See, e.g.*, CAC ¶¶ 348, 355, 1, 5; *see also* Dismissal Mem. at 22-23 & nn.15-16.)  Plaintiffs also claim that defendants violated the securities laws by making misrepresentations and omissions before the IPO concerning the capabilities of NASDAQ's exchange technology systems, and on the day of the IPO concerning the system issues NASDAQ was then experiencing.  (*See, e.g.*, CAC ¶¶ 20-21, 25, 27-28, 169-72, 176-77, 180-81, 186, 197, 203-04, 207-08; *see also* Dismissal Mem. at 46-48.)

In the months following the IPO, the SEC investigated NASDAQ's handling of the IPO, and on May 29, 2013, issued an order instituting an enforcement proceeding against the Exchange and an Exchange affiliate.  In the order, the SEC confirmed that the Exchange was performing a regulatory function in its handling of the Facebook IPO:

> The orderly initiation of secondary market trading after an IPO is one of the most fundamental functions of a national securities exchange, and affects not only the market for those individual companies but also investor confidence in the markets as a whole.

*In re The NASDAQ Stock Mkt., LLC & NASDAQ Execution Servs., LLC*, Exch. Act Rel. No. 69,655, 2013 WL 2326683, at *1, ¶ 2 (May 29, 2013) ("Enforcement Order").  Based on detailed findings covering NASDAQ's system design, NASDAQ's preparedness for the IPO, and the events of May 18, the SEC concluded that "[t]he decisions made by NASDAQ in response to trading disruptions that resulted from the design limitation led to further downstream systems issues and caused NASDAQ to violate a fundamental rule governing order priority as well as several other Commission and NASDAQ rules."  Enforcement Order ¶ 3.  While the SEC concluded that technical regulatory violations flowed from the Exchange's decision to proceed with the Cross, *see* Enforcement Order ¶¶ 58, 64, it did not conclude that that decision itself – or the Exchange's subsequent decision not to halt continuous market trading in Facebook stock – violated any law or regulation, and the SEC's factual findings concerning the events of May 18 do not otherwise support plaintiffs' claims.  Further, as noted in NASDAQ's Dismissal Memorandum, the SEC's findings of rule violations do not give rise to any claim for which plaintiffs have a cause of action.  (*See* Dismissal Mem. at 38 n.21.)

In light of the technical rule violations, the SEC imposed a civil monetary penalty, censured the Exchange, ordered the Exchange to cease and desist from committing violations of the Exchange Act and SEC regulations thereunder, and ordered the Exchange to comply with

specified remedial undertakings.  *Id.* § IV.  NASDAQ consented to the entry of the Enforcement

Order solely for the purposes of the SEC proceedings, and without admitting or denying the

SEC's findings.  *Id.* § II.  Nevertheless, the SEC's findings reflect the scope of the SEC's

oversight of the issues giving rise to plaintiffs' Complaint.  (*See* Dismissal Mem. at 13-15, 25-

26.)  Plaintiffs acknowledge as much in their motion:  "the SEC findings demonstrate that the

SEC's investigation penetrated deeply into the facts surrounding NASDAQ's system failures,

and the reckless decisions made, during the courts of the Facebook IPO and aftermarket trading."

(Memorandum of Law in Support of Lead Plaintiffs' Motion (Doc. No. 117) ("Pls. Mem.") at

18.)  And the Enforcement Order does not stand alone.  The SEC also approved NASDAQ's

proposal to provide compensation to members (and to retail investors through its members) for

losses caused by NASDAQ's systems issues.  *See* Enforcement Order ¶ 40 n. 12 (referring to

*Order Granting Approval of a Proposed Rule Change to Amend Rule 4626 – Limitation of*

*Liability*, Exch. Act Rel. No. 69,216 (Mar. 22, 2013), 78 Fed. Reg. 19,040, 19,045-47 (Mar. 28,

2013) ("Accommodation Program Approval Order")).  The SEC's approval of NASDAQ's

compensation system further demonstrates the highly regulatory nature of the conduct giving rise

to plaintiffs' claims.

> Defendants filed their motion to dismiss on July 2, 2013, asserting four grounds

for dismissal:  (i) defendants are immune from claims, such as plaintiffs' claims here, arising out

of NASDAQ's regulatory functions; (ii) the economic loss doctrine bars the negligence claims

asserted by the non-Exchange member plaintiffs; (iii) NASDAQ Rule 4626 bars the claims

asserted by the Exchange member plaintiff; and (iv) the complaint fails to state the requisite

elements of a claim under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated by the

SEC thereunder.  (*See generally* Dismissal Mem.)

In their instant motion, plaintiffs ask the Court to lift the PSLRA discovery stay triggered by defendants' motion to dismiss so they can obtain "documents and testimony that [NASDAQ and its affiliates] provided to the [SEC] in connection with the SEC's investigation into the May 18, 2012 [Facebook IPO]." (Pls. Mem. at 1.)  They further ask the Court for leave to file a second amended consolidated complaint "incorporating all relevant facts adduced from the requested discovery materials." (*Id.*)  In the alternative, if the Court denies their request for relief from the discovery stay, plaintiffs request leave to amend their Complaint "based on the new information contained in the [Enforcement Order]," although they do not identify any facts they would add. (*Id.* at 4.)

## III.    ARGUMENT

### A.    The PSLRA Mandates a Stay of Discovery Except When Particularized Discovery Is Necessary to Preserve Evidence or to Prevent Undue Prejudice

In the PSLRA, Congress instituted "a mandatory stay of discovery so that district courts could first determine the legal sufficiency of the claims in all securities class actions." *Lander v. Hartford Life & Ann. Ins. Co.*, 251 F.3d 101, 107 (2d Cir. 2001).  The PSLRA provides that the stay applies in all but narrow circumstances, and places the burden on plaintiffs to demonstrate that such narrow circumstances exist:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is ***necessary to preserve evidence or to prevent undue prejudice*** to that party.

15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).

Congress enacted the stay to prevent plaintiffs from filing securities fraud lawsuits "as a vehicle 'in order to conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint.'" *In re Vivendi Universal S.A., Sec. Litig.*, 381 F. Supp. 2d 129,

129-30 (S.D.N.Y. 2003) (quoting S. Rep. No. 104-98, at 14 (1995), *reprinted in* 1995

U.S.C.C.A.N. 679, 693)).  As Congress recognized, the "the cost of discovery often forces

innocent parties to settle frivolous securities class actions."  *In re AOL Time Warner, Inc. Sec. &*

*"ERISA" Litig.*, No. 02-5575, 2003 WL 21729842, at *1 (S.D.N.Y. July 25, 2003) (quoting H.R.

Conf. Rep. No. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730).  "Manifest in the

[PSLRA] is the mandate that courts assess the legal sufficiency of plaintiffs' securities fraud

allegations according to what plaintiffs know at the time the complaint is filed, rather than what

they wish to learn through discovery and recover from defendants merely by reason of

commencing an action charging fraud."  *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp.

2d 371, 423-424 (S.D.N.Y. 2001) (citing *S.G. Cowen Sec. Corp. v. U.S. District Court*, 189 F.3d

909, 912 (9th Cir. 1999) ("Congress clearly intended that complaints in . . . securities actions

should stand or fall based on the actual knowledge of the plaintiffs rather than information

produced by the defendants after the action has been filed.")).  Thus, lifting the discovery stay to

allow a plaintiff to improve his complaint – which plaintiffs concede is the goal of their motion

here[2] – is antithetical to the intent of the PSLRA.  *See, e.g.*, *S.G. Cowen*, 189 F.3d at 913; *In re*

*Spectranetics Corp. Sec. Litig.*, 2009 WL 3346611, at *7 (D. Colo. Oct. 14, 2009) ("Any tactic to

achieve discovery solely for the purposes of bolstering one's chances of surviving a motion to

dismiss or drafting a superior complaint through discovered material is rejected under the

PSLRA."); S. Rep. No. 104–98, at 14.

    Under the plain language of the PSLRA, plaintiffs seeking relief from the

discovery stay must demonstrate that their request is sufficiently particularized and that lifting

---

[2]   Indeed, plaintiffs acknowledge that the reason for their motion is that the discovery they
seek "will contain critical additional factual support for the Class's allegations" and "is
necessary for Lead Plaintiffs to fully develop their claims on behalf of the Class."  (Pls.
Mem. at 1, 2.)

the stay is necessary to preserve evidence or prevent undue prejudice.  *See* 15 U.S.C. § 78u-4(b)(3)(B); *see also, e.g.*, *Kuriakose v. Fed. Home Loan Mortgage Co.*, 674 F. Supp. 2d 483, 487-88 (S.D.N.Y. 2009).  As this Court noted in *In re LaBranche Securities Litigation*, 333 F. Supp. 2d 178, 181-83 (S.D.N.Y. 2004), courts sometimes consider the goals of the PSLRA and the burden of production on defedants when deciding a motion to lift the stay.  (*See also* Pls. Mem. at 10-14.)  But these considerations cannot trump the express statutory requirements.  Thus,

> even where the goals of the PSLRA are not frustrated and . . . plaintiffs' discovery request is limited to documents already produced to government regulators, courts have refused to lift the discovery stay if the narrow statutory exceptions of evidence preservation or undue prejudice have not been met.

*Kuriakose*, 674 F. Supp. 2d at 488 (quoting *380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07-1204, 2007 WL 2049738, at *2 (S.D.N.Y. July 18, 2007)); *accord Friedman v. Quest Energy Partners LP*, Nos. 08-936, et. al., 2009 WL 5065690, at *4 (W.D. Okla. Dec. 15, 2009) ("[L]ifting the discovery stay in reliance only upon a showing of minimal burden to defendants and/or based upon the general policies behind the PSLRA circumvents the clear requirements of the discovery stay and its limited exceptions.").

### B.   Plaintiffs Have Not Demonstrated that Discovery Is Necessary to Preserve Evidence or to Prevent Undue Prejudice

Plaintiffs do not and cannot contend that the requested pre-motion to dismiss discovery is necessary to preserve evidence.  Accordingly, the PSLRA stay may be lifted only if plaintiffs demonstrate that immediate discovery is necessary to prevent undue prejudice.  They cannot meet that burden.

Plaintiffs' entire undue prejudice argument is that "[w]ithout access to the same documents and materials produced by NASDAQ to the SEC, the [plaintiffs] will be prejudiced

by [their] inability to make informed decisions about [their] litigation strategy, especially where, as here, there have been significant developments in parallel proceedings." (Pls. Mot. at 15.) Absent extraordinary legal or financial conditions that could prevent plaintiffs from obtaining meaningful relief if the stay is not lifted – which plaintiffs do not and cannot contend are present here – the mere fact that NASDAQ produced documents to the SEC in a now-resolved enforcement proceeding does not constitute undue prejudice.

While the Second Circuit has not defined "undue prejudice" for purposes of the exception to the PSLRA discovery stay, courts in this district and elsewhere soundly and routinely reject the same argument plaintiffs make here.

> Plaintiffs' inability to gather evidence for settlement negotiations or to plan a litigation strategy is not evidence of undue prejudice. This is because delay is an inherent part of every stay of discovery required by the PSLRA. . . . Whether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered. Under the PSLRA, discovery in this action has been stayed. That stay does not apply to government investigations, bankruptcy proceedings, internal investigations, or non-PSLRA actions. The discrepancy between PSLRA actions and other actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions. This Court may not second-guess that judgment.

*In re Refco, Inc.*, No. 05-8626, 2006 WL 2337212, at *2 (S.D.N.Y. Aug. 8, 2006) (denying motion to lift stay to allow discovery of documents defendants produced to the SEC, other government agencies, and adversaries in bankruptcy proceedings) (internal quotation marks and citations omitted). *See also, e.g.*, *NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*, No. 10-440, 2011 WL 6844456, at *3 (S.D.N.Y. Dec. 29, 2011) (denying motion to lift stay to allow discovery of documents previously produced in an SEC enforcement action, and noting that plaintiffs' "argument, devoid of specifics, can be used in virtually every case subject to the

PSLRA and, if accepted, would create an exception that would swallow the PSLRA's automatic discovery stay"); *Kuriakose*, 674 F. Supp. 2d at 489 ("[T]he mere fact that government entities have been provided the discovery that Plaintiffs must wait to obtain 'does not rise to the level of undue prejudice.' . . . The delay faced by Plaintiffs is inherent in every PSLRA-mandated discovery stay.") (citing *Aspen Tech.*, 2007 WL 2049738, at *4); *Spectranetics*, 2009 WL 3346611, at *6 ("unequal footing" with government regulators is not sufficient to establish undue prejudice); *Brigham v. Royal Bk. of Canada*, No. 08-4431, 2009 WL 935684, at *2 (S.D.N.Y Apr. 7, 2009) (rejecting argument that plaintiff would be unduly prejudiced if forced to make litigation decisions without the benefit of information previously provided to regulators, who had already settled their dispute with the defendant); *In re Sunrise Senior Living, Inc.*, 584 F. Supp. 2d 14, 18 (D.D.C. 2008) (noting that a parallel government investigation in a securities fraud case is "not at all an uncommon occurrence," and thus that "Congress intended that the prejudice occasioned by the [PSLRA] stay must exceed that resulting from routine SEC securities litigation"); *In re Asyst Tech., Inc. Deriv. Litig.*, No. 06-4669, 2008 WL 916883, at *2 (N.D. Cal. Apr. 3, 2008) (plaintiffs must show more than that they are not on "equal footing" with the government); *Aspen Tech.*, 2007 WL 2049738, at *4 ("[T]he mere fact that the discovery at issue has been provided to non-PSLRA governmental plaintiffs does not alone constitute undue prejudice within the meaning of the PSLRA's stay provision."); *In re Smith Barney Transfer Agent Litig.*, No. 05-7583, 2006 WL 1738078 (S.D.N.Y. June 26, 2006) (rejecting argument that stay "would unfairly delay the discovery of inculpatory evidence and hinder Plaintiffs' ability to formulate settlement and litigation strategies," even though the requested discovery had already been produced to the SEC in connection with a previously settled SEC action).

10

Plaintiffs disregard this long, well-developed line of cases and rely instead on this Court's 2004 decision in *LaBranche*.  (*See* Pls. Mem. at 15-16.)  Plaintiffs' reliance is misplaced. In *LaBranche*, the Court granted the plaintiffs' motion to lift the PSLRA discovery stay to permit the plaintiffs to obtain documents the defendants had produced to the SEC and the New York Stock Exchange in investigations into LaBranche's "trading ahead" practices, which were also the subject of the plaintiffs' complaint.  333 F. Supp. 2d 178.  The Court found that the circumstances of that case constituted a "rapidly shifting landscape" in which the plaintiffs would have been prejudiced by an inability to make informed decisions about their litigation strategy.[3]  *Id*. at 183.

The absence of such a "rapidly shifting landscape" here is demonstrated starkly by the facts of *In re WorldCom Securities Litigation*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002), upon which this Court relied in deciding *LaBranche*, *see* 333 F. Supp. 2d at 182-83.  When the plaintiffs in *WorldCom* sought relief from the discovery stay, WorldCom had entered bankruptcy, governmental authorities were pursuing civil and criminal actions, creditors' committees were seeking recoveries, and pension plan beneficiaries were pursing ERISA claims. *Id.* at 302-05.  All of those parties had obtained, or had received permission to obtain, documents WorldCom had produced to governmental authorities.  *Id.* at 305.  And, importantly, the district court had ordered the ERISA plaintiffs and the securities plaintiffs to participate in global

---

[3]  The record from the *LaBranche* action shows that the Court's initial decision to lift the stay was not enforced.  The defendant moved for reconsideration and the plaintiffs then moved to compel defendants to produce the requested documents.  The Court never ruled on the merits of the motion for reconsideration or the motion to compel.  When the Court ruled on defendants' motion to dismiss, it denied those motions as moot.  *See* Docket Nos. 35, 43, & 50 in *In re LaBranche Securities Litigation*, No. 03-8201 (S.D.N.Y.).  The Court similarly deferred ruling on motions to lift the PSLRA discovery stay in two subsequent cases.  *See In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 763 F. Supp. 2d 423, 581 (S.D.N.Y. 2011) (Sweet, J.); *In re NYSE Specialists Sec. Litig.*, 405 F. Supp. 2d 281, 320-21 (S.D.N.Y. 2005) (Sweet, J.).

settlement discussions.  *Id.*  In those extraordinary circumstances – in which there was a "very real risk that [the securities plaintiffs would] be left to pursue [their] action against defendants who no longer have anything or at least as much to offer" – the court found that the securities plaintiffs would be unduly prejudiced by an "inability to make informed decisions about [their] litigation strategy in a rapidly shifting landscape."  *Id.  See also In re Bk. of Am. Corp. Sec., Deriv., and ERISA Litig.*, No. 09-2058, 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) (undue prejudice existed because "[d]iscovery [was] moving apace in parallel litigation," putting plaintiffs at an unfair disadvantage); *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99-342, 1999 WL 223158, at *1 (S.D.N.Y. Apr. 16, 1999) (lifting the stay where litigation concerning control over a defendant was pending in other forums, and "[s]uccess in those other forums would also moot [plaintiff's] ability to seek redress for those wrongs in this suit").

There is no "rapidly shifting landscape" here, much less any extraordinary circumstances akin to those that justified lifting the PSLRA stay in *WorldCom*.[4]  Putting aside whether plaintiffs could overcome NASDAQ's immunity and threshold legal defenses, NASDAQ is solvent, there is no question of corporate control, the SEC enforcement proceeding has been settled, the SEC has approved an accommodation plan (the proceeds of which will inure to plaintiffs' benefit), NASDAQ has not provided the documents plaintiffs seek now to any parties in any of the consolidated matters pending before this Court or any parties other than the SEC, and there is no ongoing investigation, litigation, or settlement negotiation that could threaten plaintiffs' potential recovery.  Accordingly, plaintiffs cannot demonstrate undue

---

[4]     To the extent plaintiffs assert that *LaBranche* stands for the proposition that the mere fact that defendants have produced documents to regulators is sufficient for plaintiffs to gain access to such documents notwithstanding the PSLRA stay of discovery, such a proposition is not in accord with the prevailing law in this and other districts.  (*See* pp. 9-10, *ante*.)

prejudice.  *See, e.g.*, *Kuriakose*, 674 F. Supp. 2d at 489-90 (no undue prejudice where there was

no activity in related actions that would affect the plaintiffs' ability to recover, and thus no

"rapidly shifting landscape" as in *LaBranche*); *In re GMR Sec. Litig.*, No. 12-4599, 2012 WL

5457534, at *1 (S.D.N.Y. Nov. 8, 2012) ("[T]here [were] no other claimants competing with the

plaintiffs' claims and thus the automatic stay is not prejudicial."); *Aspen Tech.*, 2007 WL

2049738, at *3-4 (no undue prejudice where no settlement discussions in related matters were

"underway or even imminent" and there was no concern about "limited assets of insolvent

defendants"); *Sisk v. Guidant Corp.*, No. 05-1658, 2007 WL 1035090 (S.D. Ind. Mar. 30, 2007)

(noting that the PSLRA requires more than delay or inconvenience, and finding no undue

prejudice even though defendant had been acquired and was under investigation by several

governmental authorities); *Smith Barney*, 2006 WL 1738078, at *1-2 (finding no undue prejudice

even though defendants had reached a $208 million settlement with the SEC because defendants

were solvent and plaintiffs presented no evidence that defendants lacked the resources to reach a

settlement or to satisfy a judgment); *Vivendi*, 381 F. Supp. 2d at 130-31 (no undue prejudice in

absence of evidence that plaintiffs "face the same prospect, as in *WorldCom* or *Global

Intellicom*, that they would be left without remedy in light of settlement discussions or other

intervening events, such as bankruptcy or attempt to take control over plaintiff by acquisition").

Finally, contrary to plaintiffs' argument (Pls. Mot. at 13-14), it is irrelevant

whether the requested discovery would burden NASDAQ.  "There is no exception to the

discovery stay for cases in which discovery would not burden the defendant.  The proper inquiry

under the PSLRA is whether the plaintiff would be unduly prejudiced by the stay, not whether

the defendant would be burdened by lifting the stay."  *Smith Barney*, 2006 WL 1738078, at *3.

*See also, e.g.*, *NECA-IBEW Pension Trust*, 2011 WL 6844456, at *3 (lack of burden to

defendants is "not sufficient to overcome the command of the PSLRA"); *Kuriakose*, 674 F.

Supp. 2d at 488 (prior production to regulators does not warrant lifting stay) (citing *Aspen Tech.*,

2007 WL 2049738, at *2).

Because plaintiffs will not be unduly prejudiced by the PSLRA discovery stay,

their motion should be denied.

**C.**     **The PSLRA Discovery Stay Applies to All of Plaintiffs' Claims**

Plaintiffs incorrectly assert that their negligence claims are "not constrained by

the PSLRA [discovery stay]." (Pls. Mem. at 16.)  The PSLRA stays "all discovery" in "*any*

private action arising under this chapter."  *Smith Barney*, 2006 WL 1738078, at *3 (quoting 15

U.S.C. § 78u-4(b)(3)(B)).  Thus, the stay applies to discovery sought in respect of all claims

asserted in an action asserting securities fraud claims.  *See id.* (citing *In re Trump Hotel S'holder*

*Deriv. Litig.*, No. 96-7820, 1997 WL 442135, at *2 (S.D.N.Y. Aug. 5, 1997) ("There is simply

nothing in either the text or the legislative history of the PSLRA that suggests that Congress

intended to except federal securities actions in which there happens to be both diversity of

citizenship and pendent state law claims.")).  Courts will not lift the stay "on a line-item basis for

non-securities claims."  *Smith Barney*, 2006 WL 1738078, at *3.  *Accord Gardner v. Major*

*Auto. Cos.*, No. 11-1664, 2012 WL 1230135, at *4 (E.D.N.Y. Apr. 12, 2012) ("[T]he PSLRA

stay provision expressly applies to federal securities *actions* (not claims) arising under the

Exchange Act.")).  If the mere assertion of non-securities claims could allow plaintiffs to

circumvent the stay mandated by Congress, "the PSLRA's requirements would essentially be

vitiated."  *Smith Barney*, 2006 WL 1738078, at *3; *see also Sarantakis v. Gruttadauria*, No. 02-

1609, 2002 WL 1803750, at *4 (N.D. Ill. Aug. 5, 2002) (noting that lifting the stay for state

claims arising from same circumstances as securities claim "would be an improper end run

around the PSLRA").  Indeed, plaintiffs have implicitly acknowledged that the stay of discovery

14

applies to all of their claims:  they have not pursued any discovery in the many months since their claims were consolidated.

In their present motion, plaintiffs rely primarily on *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162 (S.D.N.Y. 2001) (Pls. Mot. at 17), an outlying decision that does not support plaintiffs' position in any event.  The *Tobias* court addressed only the "narrow question" whether "the PSLRA stays discovery with respect to plaintiff's non-fraud state law claims where jurisdiction over such claims is based on diversity of citizenship," and decided that it does not.  *Id.* at 164-65.  Here, there is federal question jurisdiction over plaintiffs' negligence claims because they implicate substantial federal interests.  *See In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, MDL No. 12-2389, Civ. No. 12-6439, --- F. Supp. 2d ---, 2013 WL 525191, at *9 & *9 n.4 (S.D.N.Y. Feb. 13, 2013) ("*Zack*") (denying motion to remand).  Accordingly, even assuming it was decided correctly, *Tobias* does not apply.  *See, e.g.*, *Rampersad v. Deutsche Bank Sec., Inc.*, 381 F. Supp. 2d 131, 134 (S.D.N.Y. 2003) (distinguishing *Tobias* in holding PSLRA stay applied to common law claims over which court had federal question jurisdiction); *Sarantakis*, 2002 WL 1803750, at *4 (same).  Other cases, like those cited above in this section, have generally come out differently than *Tobias,* and several courts have specifically concluded *Tobias* was decided incorrectly.  *See, e.g.*, *Union Cent. Life Ins. Co. v. Ally Fin., Inc.*, No. 11-2890, 2012 WL 3553052, at *3 (S.D.N.Y. Aug. 17, 2012) (citing cases disagreeing with *Tobias*); *Gardner*, 2012 WL 1230135, at *5 (disagreeing with *Tobias* and concluding that the stay applied to fiduciary duty and negligent misrepresentation claims asserted with a securities claim).

The other case on which plaintiffs rely, *In re Tyco International, Ltd. Multidistrict Litigation*, MDL No. 02–1335–B, 2003 WL 23830479 (D.N.H. Jan. 29, 2003) (Pls. Mem. at 17), is wholly inapposite.  Before that court were separate securities, ERISA, and derivative actions

that had been consolidated for pretrial purposes.  *Id.*  In the part of the opinion plaintiffs quote (Pls. Mem. at 17), the court considered whether "prudence" – not the PSLRA – warranted a stay of discovery in the ERISA and derivative cases.  *Id.* at *3.  That court's decision to allow discovery in those actions has no bearing here.

Allowing plaintiffs discovery in support of only their negligence claims would improperly permit them to circumvent the PSLRA discovery stay.  This is particularly true given that plaintiffs' securities fraud and negligence claims – even though they require proof of different elements – arise from the same facts and circumstances.  Indeed, while plaintiffs argue that the requested discovery would aid their negligence claims, they do not and cannot deny that they seek the same discovery in an effort to support their securities claims.  Accordingly, there is no basis to permit discovery solely on plaintiffs' negligence claims.

### D.    The SRO Immunity Doctrine Warrants a Stay of Discovery Independently of the PSLRA

Independent of the PSLRA discovery stay, discovery is not warranted in this case because NASDAQ is protected from plaintiffs' claims by the doctrine of SRO immunity.  (*See* § II, *ante*; Dismissal Mem. at 17-34.)

Immunity affords protection "from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that "the denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action").  Thus, immunity protects SROs not only from money damages, but also from the burden and distraction of discovery concerning their regulatory functions.  *Cf. Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (Immunity "is meant to give government officials a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as

16

discovery,'" because such inquiries "'can be peculiarly disruptive of effective government.'") (quoting *Mitchell*, 472 U.S. at 526); *Locurto v. Safir*, 264 F.3d 154, 164 (2d Cir. 2001) (holding that a decision rejecting immunity is immediately appealable because denials of immunity are "conclusive with regard to a defendant's right to avoid *pre-trial* discovery"); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65 (2d Cir. 1999) ("The immunity protects the official not just from liability but also from suit on such claims, thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing a trial.").

Accordingly, a court should strive to dispose of claims barred on grounds of immunity on a Rule 12(b)(6) motion.  Indeed, immunity "becomes meaningless if not effectuated as early as possible in the proceedings."  *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1306 (11th Cir. 2007) (Tjoflat, J., dissenting) (citing cases for the proposition that immunity functions as a shield from litigation, rather than as a defense to liability, and therefore must be evaluated and enforced at the earliest possible stage).  *See also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[B]ecause '[t]he entitlement is an immunity from suit rather than a mere defense to liability,' we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (quoting *Mitchell*, 472 U.S. at 526); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("[It is] well established that an affirmative defense of official immunity should be resolved as early as possible by the court."). (*See also* Dismissal Mem. at 22.)

The discovery plaintiffs seek concerns, and all of plaintiffs' claims arise from, NASDAQ's regulatory functions.  Such discovery would be inconsistent with the purposes of the SRO immunity doctrine.  Thus, entirely apart from the PSLRA, the discovery plaintiffs seek is not warranted in this case.

**E.    Plaintiffs' Request for Leave to Amend Should Be Denied Because Any Amendment Would Be Futile**

As this Court recently noted, "the standard for leave to amend, while permissive, is by no means automatic." *Billhofer v. Flamel Tech., S.A.*, No. 07-9920, 2012 WL 3079186, at *4 (S.D.N.Y. July 30, 2012) (Sweet, J.) (denying leave to file a proposed second amended complaint because amendment would fail to state a claim) (citation omitted). "For example, a motion to amend a complaint may be denied as futile when the proposed amendment fails to state a claim or would be subject to a successful motion to dismiss." *Id.* at 3 (internal quotation marks and citation omitted). Any amendment of plaintiffs' Complaint based on the Enforcement Order or documents NASDAQ produced to the SEC would be futile because no newly pled facts would change the Court's analysis of defendants' threshold legal defenses – namely, SRO immunity, the economic loss doctrine, Rule 4626, and the failure of plaintiffs to plead the necessary elements of their 10b-5 claims.

Nothing in the SEC's Enforcement Order remotely supports plaintiffs' position on SRO immunity. To the contrary, the Order emphatically confirms that the conduct about which plaintiffs complain falls squarely within NASDAQ's regulatory functions as an SRO. As the SEC noted at the outset of its Order, "[t]he orderly initiation of secondary market trading after an IPO is one of the most fundamental functions of a national securities exchange." Enforcement Order ¶ 2. It is precisely such "fundamental functions," which in the absence of an SRO would be governmental responsibilities, for which a national securities exchange like NASDAQ is entitled to SRO immunity. (*See* Dismissal Mem. at 17-34.) Plaintiffs' motion for leave to

amend fails to point to anything about the SEC's investigation or the Enforcement Order that would enable plaintiffs to overcome NASDAQ's SRO immunity.[5]

Similarly, the Enforcement Order does nothing to lessen the applicability of the economic loss doctrine to the negligence claims of the non-member plaintiffs or the applicability of NASDAQ Rule 4626 to the claims asserted by NASDAQ member firm First New York Securities LLC ("First New York").  The non-member plaintiffs have no contractual privity with NASDAQ and are indisputably seeking to recover economic losses they claim to have sustained as a result NASDAQ's allegedly negligent conduct.  The factual findings in the SEC's Enforcement Order say nothing that would enable such plaintiffs to circumvent the economic loss doctrine or state a negligence claim cognizable under New York law.  (*See* Dismissal Mem. at 35-40.)  Nor do the SEC's findings of technical rule violations committed by NASDAQ as a result of its decision to proceed with the Facebook IPO give plaintiffs any basis to state a claim against NASDAQ, as it is well settled that there is no private right of action under Section 6 of the Exchange Act for violation of such exchange rules.  *See, e.g.*, *Gurfein v. Ameritrade*, 312 Fed. App'x 410, 414 (2d Cir. 2009).  (*See also* Dismissal Mem. at 38 n.21.)  The Enforcement

---

[5]     Courts routinely deny leave to amend when dismissing claims on grounds of SRO immunity.  *See, e.g.*, *Std. Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, Nos. 07-2014, *et al.*, 2010 WL 749844, at *2 (S.D.N.Y. Mar. 1, 2010), *aff'd* 637 F.3d 112 (2d Cir. 2011); *In re NYSE Specialists Sec. Litig.*, 405 F. Supp. 2d 281, 302 (S.D.N.Y. 2005), *aff'd* 503 F.3d 89, 102 (2d Cir. 2007); *DL Capital Group LLC v. Nasdaq Stock Mkt. Inc.*, No. 03-9730, 2004 WL 993109, at *7 (S.D.N.Y. May 5, 2004), *aff'd* 409 F.3d 93 (2d Cir. 2005); *D'Alessio v. N.Y. Stock Exch., Inc.*, 125 F. Supp. 2d 656, 659 (S.D.N.Y. 2000), *aff'd* 258 F.3d 93 (2d Cir. 2001); *Barbara v. N.Y. Stock Exch., Inc.*, No. 94-1088, 1995 WL 221487, at *7 (E.D.N.Y. Mar. 30, 1995), *aff'd* 99 F.3d 49 (2d Cir. 1996).  *See also* *Hardy v. Fischer*, No. 08-2460, 2010 WL 4359229, at *3 (S.D.N.Y. Nov. 3, 2010) (denying leave to amend to add new plaintiffs as futile when defendants were entitled to qualified immunity for the actions allegedly taken against the proposed new plaintiffs); *Rolle v. Berkowitz*, No. 03-7120, 2004 WL 287678, at *3 (S.D.N.Y. Feb. 11, 2004) ("Amendment of Plaintiff's complaint would be futile. . . .  [because] [n]o newly pled facts will change the fact that Defendants . . . enjoy immunity from suit . . . .").

Order similarly provides no basis for NASDAQ member firm First New York to avoid the clear mandate of NASDAQ Rule 4626 that "Nasdaq . . . shall not be liable for any losses, damages, or other claims arising out of the Nasdaq Market Center or its use."  NASDAQ Rule 4626.  (*See also* Dismissal Mem. at 40-43.)  Indeed, in approving NASDAQ's proposal to modify Rule 4626(b) to compensate members for losses sustained directly as a consequence of the systems issues NASDAQ experienced in the Facebook IPO, the SEC acknowledged the liability limitations of Rule 4626 otherwise applicable to such claims.  *See Accommodation Program Approval Order*, 78 Fed. Reg. at 19,045-46.  (*See also* Dismissal. Mem. at 15-17.)

Finally, the SEC's findings do not rectify any of the pleading deficiencies of plaintiffs' 10b-5 claims.  The Enforcement Order does not suggest that NASDAQ made any material misrepresentation or omission, much less that NASDAQ made any misrepresentation or omission deliberately or recklessly to defraud plaintiffs.  It does not enhance plaintiffs' arguments concerning the materiality of the statements on which they base their securities fraud claims.  It does not give plaintiffs any basis on which to allege that they relied on such statements or support plaintiffs' argument that they should be entitled to a presumption of reliance.  And it does not provide any basis on which plaintiffs could allege a cogent theory of loss causation.  (*See generally* Dismissal Mem. at 43-61.)

In short, none of the defects in plaintiffs' claims could be cured with new facts from the SEC's investigation or Enforcement Order.  Accordingly, plaintiffs' request for leave to amend their Complaint should be denied.

## IV.     CONCLUSION

For all the reasons set forth above, the Court should deny plaintiffs' motion and allow defendants such other and further relief as the Court finds just and proper.


Date:  July 12, 2013                                    Respectfully submitted,


/s/ Paul Lantieri III
William A. Slaughter (PA Bar No. 30637)*
Stephen J. Kastenberg (PA Bar No. 70919)*
Paul Lantieri III (PA Bar No. 88160)*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel:  215.665.8500
Fax:  215.864.8999
slaughter@ballardspahr.com
kastenberg@ballardspahr.com
lantierip@ballardspahr.com

*Attorneys for Defendants*
*The NASDAQ OMX Group, Inc., The*
*NASDAQ Stock Market LLC, Robert*
*Greifeld, and Anna M. Ewing*

*\*Admitted pro hac vice*

DMEAST #17078209

21